### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MASSACHUSETTS


| | |
|---|---|
| LARRY RUEL, ET AL., | ) |
| Plaintiffs | ) |
| | ) |
| v. | ) C.A. 07-cv-30136-MAP |
| | ) |
| LIBERTY SECURITY SERVICES, INC., | ) |
| Defendant | ) |


### MEMORANDUM AND ORDER REGARDING
### DEFENDANT'S MOTION TO ALTER JUDGMENT
### AND FOR ENTRY OF JUDGMENT SATISFIED
### (Dkt. No. 123)

### October 18, 2010

PONSOR, D.J.

### I. INTRODUCTION.

This motion comes before the court following a trial and verdict in favor of Plaintiff; Defendant now seeks relief pursuant to Fed. R. Civ. P. 59(e).  Pointing out that Plaintiff received compensation for his injuries from joint tortfeasors prior to the trial, and that the earlier compensation exceeded the amount of the jury verdict, Defendant contends that Plaintiff is entitled to no additional damages.  For the reasons set forth below, Defendant's argument is correct, and its motion will be allowed.

### II. PROCEDURAL AND FACTUAL BACKGROUND.

Plaintiff Larry Ruel was assaulted at Baystate Medical Center while making a delivery.  His attacker, a mentally

unbalanced individual named William Walker, had entered the lobby of the Medical Center and was threatening people with a two-by-four.  Plaintiff's theory of liability was that two security guards (employees of Defendant Liberty Security Services, Inc. ("Liberty")) failed to warn Plaintiff of the danger posed by Walker's presence.  As a result, Plaintiff suffered injuries when Walker hit him with the two-by-four, including a broken arm.

Initially, there were four defendants: Liberty, the security company; Colebrook Management LLC, the management company; Baystate Medical Center, Inc., Baystate Health Systems, and Baystate Health System Health Services, Inc. (collectively "Baystate"), all tenants  in the building; and South Campus Group, LLC ("SCG"), owner of the building.  Prior to trial, the court granted summary judgment for Baystate. Defendants SCG and Colebrook settled with Plaintiff for $15,000 and $40,000 respectively, totaling $55,000. Following trial, the jury returned with a verdict for Plaintiff and awarded damages in the amount of $36,000, which with a subtraction for contributory negligence and an addition for interest, resulted in a total final award of $23,958.00

### III. DISCUSSION.

Mass. Gen. Laws ch. 231B, § 4(a) precludes any recovery by Plaintiff here against Liberty.  The relevant portion of

the statute reads as follows:

> When a release or covenant not to sue or not to
> enforce judgment is given in good faith to one of
> two or more persons liable in tort for the same
> injury . . . it shall not discharge any of the other
> tortfeasors from liability for the injury . . . <u>but
> it shall reduce the claim against the others to the
> extent of any amount stipulated by the release or
> the covenant</u>.

(emphasis supplied).

Here, Plaintiff concedes he was paid $55,000 by joint
tortfeasors and that the jury awarded him damages against
Liberty of only $23,958.00. The settlement amount exceeds the
jury award. Thus, reducing the verdict against Liberty by the
larger settlement amount leaves Plaintiff entitled to no
recovery.

Plaintiff's arguments to the contrary notwithstanding,
Liberty, Colebrook, and SCG were all joint tortfeasors here,
as § 4 requires. In <u>O'Brien v. Christianson</u>, 662 N.E.2d 205
(Mass. 1996), the SJC quoted with approval the Restatement
(Second) of Torts, § 422, which stated that a possessor of
land "who entrusts to an independent contractor . . . work on
the land . . . is subject to the same liability as though he
had retained the work in his own hands . . . ." <u>Id.</u> at 208
n.9. Thus, SCG, as owner of the land, was independently
liable to Plaintiff for his injuries; Colebrook, as manager of
the property, stood in the same position. Since Liberty, SCG
and Colebrook were all joint tortfeasors, § 4 applies and

requires allowance of Defendant's motion.

The court unfortunately injected some confusion into the analysis of these issues during the summary judgment hearing by loosely employing the phrase "vicarious liability." There was no agency relationship among the three joint tortfeasors, and the complaint did not allege a cause of action based on vicarious liability. Thus, vicarious liability did not arise here in the strict legal sense. Plaintiff's citation of Elias v. Unisys Corp., 573 N.E.2d 946 (Mass. 1991), does not assist Plaintiff.

Elias involved an automobile tort in which the plaintiff settled with the driver and then attempted to collect an additional amount from the employer under a respondeat superior theory. Plaintiff attempted to cite § 4 for the proposition, noted above, that a settlement with one defendant "shall not discharge any of the other tortfeasors from liability. . . ." Justice Greany, writing for the SJC, held that § 4 did not apply in a vicarious liability situation, and therefore the plaintiff could not sue both the driver and the employer, and then seek to sue the employer when the employee settled.

Here, of course, there is no employer/employee relationship, and Elias does not provide an escape hatch from the effect of ch. 231B, § 4(a), in a situation where the relevant parties are, in fact, joint tortfeasors.

4

IV. <u>CONCLUSION</u>.

For the foregoing reasons, Defendant's Motion to Alter Judgment and for an Order that Judgment has been Satisfied (Dkt. No. 123) is hereby ALLOWED.  Defendant is not obliged to pay any damages to Plaintiff under these circumstances.

It is So Ordered.

/s/ Michael A. Ponsor
MICHAEL A. PONSOR
United States District Judge